**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PANDORA S., | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-cv-5574 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Pandora S.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [Dkt. 17] is DENIED and Defendant's motion for summary judgment [Dkt. 18] is GRANTED. The final decision of the Commissioner is affirmed.

1. **Procedural History**

On August 8, 2022, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 30, 2020. [Administrative Record ("R.") 15.] The claim was denied initially and upon reconsideration. *Id*. On December 19, 2024, after an Administrative Hearing, an Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. [R. 28.] The Appeals Council denied review on March 14, 2025 [R. 1], rendering the ALJ's December 19, 2024 decision the final decision of the

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Plaintiff filed a "Brief in Support of Reversing the Decision of the Commissioner of Social Security" [Dkt. 17], which the Court treats as a motion for summary judgement. Defendant filed a "Memorandum in Support of Motion for Summary Judgement" [Dkt. 18], which the Court treats as a cross motion for summary judgement.

Commissioner. 20 C.F.R. § 404.981. On May 19, 2025, Plaintiff filed the instant action seeking review of the Commissioner's decision. [Dkt. 17.]

**2. The ALJ's Decision**

In her decision, the ALJ analyzed Plaintiff's claim following the SSA's five-step evaluation process to determine whether Plaintiff was disabled. [R. 15-28.] At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [R. 17.] At Step Two, the ALJ found Plaintiff had severe impairments of depression, anxiety, cognitive impairment, narcolepsy, and gender dysphoria. *Id*. At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id*. In determining Plaintiff's mental impairments, the ALJ also analyzed the Paragraph B and Paragraph C criteria for assessing mental impairments. [R. 17-18.] The ALJ found Plaintiff had (i) a mild limitation in understanding, remembering or applying information, (ii) a moderate limitation in interacting with others, (iii) a mild limitation in concentrating, persisting or maintaining pace, and (iv) a mild limitation in adapting or managing oneself. [R. 18.] The ALJ further found the evidence of record failed to establish the presence of Paragraph C criteria. *Id*.

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following limitations:

> "[T]he claimant can have occasional contact with coworkers, supervisors, and general public without group, tandem, or teamwork tasks, and no problem solving tasks with the general public; can understand, remember, and carry out simple instructions with sufficient persistence, concentration, or pace to timely and appropriately complete job duties; can make simple decisions and can adapt to routine workplace changes; and needs to avoid concentrated exposure to hazards, including dangerous moving machinery and unprotected heights."

[R. 18.] At Step Four, the ALJ concluded Plaintiff is unable to perform any past relevant work. [R. 26.] At Step Five, after considering the Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. [R. 27.] Specifically, the ALJ determined Plaintiff would be able to perform the requirements of housekeeping cleaner (DOT # 323.687-014, SVP 2, light), laundry laborer (DOT # 361.687-018, SVP 2, medium), and cleaner II (DOT # 919.687-014, SVP 1, medium). *Id*. Accordingly, the ALJ found Plaintiff was not disabled from the application date through the date of the decision. [R. 28.]

**3. Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build[] an accurate and

logical bridge" from the evidence to [their] conclusion." *Hess*, 92 F.4th at 676; *Lincoln v. Bisignano*, 173 F.4th 886, 891 (7th Cir. 2026). Finally, the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

**4. Discussion**

Plaintiff contends the ALJ erred by: (1) violating Social Security Regulation ("SSR") 96-8p in the RFC finding; (2) improperly evaluating the reports of Dr. Erin Hill, a treating source, and Shanta Gomez, a treating counselor; and (3) improperly evaluating Plaintiff's subjective symptoms. As discussed below, the Court disagrees on all three issues.

**a. The ALJ Complied with the Requirements of SSR 96-8p**

SSR 96-8p requires that the RFC assessment "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). Plaintiff contends the ALJ violated SSR 96-8p by not encapsulating all limitations that would stem from narcolepsy in the RFC and in the hypothetical presented to the Vocational Expert ("VE") [Dkt. 17 at 7-9] and failing to explain why the ALJ did not adopt reviewing psychologist Dr. Lionel Hudspeth's opinions on social interactions in the RFC [Dkt. 17 at 4-5]. The Court finds the ALJ complied with the requirements of SSR 96-8p.

In determining the parameters of the RFC, the ALJ discussed Plaintiff's history of narcolepsy, including reviewing Plaintiff's medical records and medication history. [R. 20-24.] The ALJ found that while the record shows evidence of narcolepsy, the record does not support the alleged intensity, persistence, and limiting effects. [R. 19.] Nonetheless, to accommodate Plaintiff's narcolepsy, the ALJ specifically provided, among other limitations, that Plaintiff "avoid

concentrated exposure to hazards, including dangerous moving machinery and unprotected heights." [R. 25.] It is clear the ALJ declined to provide additional limitations in the RFC because she found Plaintiff's allegations that her hypersomnolence[3] would result in off-task time or reduced pace of work not entirely consistent with the evidence. [R. 24.] Plaintiff testified to driving, researching treatment for her gender change, traveling the world, and interacting with others, all of which the ALJ noted was not consistent with the symptoms and limitations Plaintiff complained about. *Id.*; *see also Carmen O-A v. Dudek*, No. 23-cv-7842 ("Plaintiff's argument assumes her allegations of pain enjoyed a presumption of truthfulness that the ALJ had to rebut. But Plaintiff has the burden of proof to demonstrate she was disabled, and there is no presumption of truthfulness."). Despite Plaintiff's objections, the Court finds the ALJ built a logical and accurate bridge between the evidence of record and the RFC she ultimately issued. *Berger*, 516 F.3d at 545.

Plaintiff argues "the ALJ's RFC and limitations from narcolepsy were based on a misunderstanding of the Plaintiff's impairment." [Dkt. 17 at 7.] Contrary to the decision in *Sarchet v. Chater*, 78 F.3d 305, 307-09 (7th Cir. 1996), the case Plaintiff relies on, the ALJ here did not engage in sociological speculation or substitute her own assumptions for a proper analysis of the medical evidence. The ALJ considered Plaintiff's allegations of hypersomnolence and fatigue and found them not entirely consistent with the evidence. [R. 24.] The ALJ was not required to include limitations in the RFC that she found unsupported by the record. *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013) (holding an ALJ need not incorporate limitations she reasonably discounted based on inconsistencies between the claimant's alleged symptoms and reported daily activities).

Plaintiff next argues that had the ALJ factored narcolepsy into the RFC finding, it is likely

[3] Hypersomnolence is defined as an inability to stay awake and alert during major waking episodes, resulting in periods of irrepressible need for sleep or unintended lapses into drowsiness or sleep. Pradeep C. Bollu, Sivaraman Manjamalai, Mahesh Thakkar & Pradeep Sahota, *Hypersomnia*, 115 Mo. Med. 85, 85 (2018).

that Plaintiff would exceed the ten percent off-task allowance and typical break schedules of employers. [Dkt. 17 at 9.] While Plaintiff testified she needs to nap at least once a day and experiences excessive fatigue, the ALJ considered and discounted this testimony as not entirely consistent with the record. [R. 23-24.] The Court agrees with Defendant [Dkt. 18 at 16] that alone, Plaintiff's bare statements about impaired sleep and/or fatigue (which is all the evidence she musters on this point), do not suffice to prove her disability. *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) ("A claimant's assertions of pain, taken alone, are not conclusive of disability.") (citing 42 U.S.C. § 423(d)(5)(A)). The Court finds Plaintiff's harmless error argument equally unavailing, as Plaintiff has pointed to no medical evidence in the record establishing that her off-task time would exceed the tolerance identified by the VE. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding harmless error argument fails where claimant points to no medical evidence establishing that greater limitations were warranted).

Plaintiff further alleges the ALJ did not properly evaluate the opinion of reviewing psychologist Dr. Hudspeth as the ALJ did not explain why Dr. Hudspeth's opinion that Plaintiff would require only minimal contact with the public, coworkers, and supervisors was not adopted. [Dkt. 17 at 5-7.] In reviewing a medical opinion, the regulations merely require an ALJ to articulate how persuasive he or she found a medical opinion and only discuss the supportability and consistency of the opinion with the record (though the ALJ evaluates several other factors as well). 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ properly evaluated the persuasiveness of Dr. Hudspeth's opinion and adequately discussed the supportability and consistency factors.

Dr. Hudspeth assessed Plaintiff in August 2023 and concluded Plaintiff required "minimal contact with public, co-workers, and supervisors." [R. 26.] Dr. Hudspeth's found Plaintiff had a short temper, high irritability, and a very difficult time getting along with people. [R. 6277; R. 3587.] The ALJ did not find Dr. Hudspeth's opinions persuasive. [R. 26.] As the ALJ explained,

Dr. Hudspeth's opinions were unsupported and inconsistent with the hearing level record, which reflected Plaintiff was able to travel internationally and interact with medical sources, demonstrating a capacity for at least occasional[4] contact with others (which is what the RFC specified). [R. 25.] *See also* 20 C.F.R. § 404.1520c(c)(1). The ALJ also detailed treatment history and Plaintiff's reported daily activities, both of which were inconsistent with Dr. Hudspeth's conclusions. [R. 19-26.] Plaintiff's argument that the ALJ supplied only a conclusory statement in discounting Dr. Hudspeth's findings misses the point. [Dkt. 17 at 5.] The Court's review is not limited to any single statement in the ALJ's opinion but rather encompasses the decision as a whole. *See Deloney v. Saul*, 840 F. App'x 1, 5 (7th Cir. 2020) (finding that isolated portions of the ALJ's decision cannot be read apart from the decision as a whole when evaluating the treatment of a medical opinion). This ALJ's decision as a whole is supported by substantial evidence.

Plaintiff also argues the ALJ improperly relied on her lay intuition to formulate her own restrictions on Plaintiff's interactions with others that were unsupported by the record. [Dkt. 17 at 6.] This argument is without merit. The decision in its entirety reflects that the ALJ did not substitute her own lay judgment for that of a medical source but rather evaluated the medical opinion evidence against the broader record and found it inconsistent with the objective findings therein. [R. 26] In the same vein, Plaintiff argues the ALJ should have solicited an updated psychological expert opinion given the newer mental health treatment records in the file after the reconsideration review, including a form from Licensed Social Worker ("LSW") Shanta Gomez who found marked and extreme limitations in multiple mental health areas. [R. 25-26; Dkt. 17 at 6.] As Defendant points out, Plaintiff failed to demonstrate that the newer records would have changed the picture so much that Dr. Hudspeth would have altered his opinion. *See Massaglia v.*

---

[4] "Occasionally" means occurring from very little up to one-third of the time. SSR 83-10, 1983 WL 31251 (S.S.A. Jan. 1, 1983).

*Saul*, 805 F. App'x 406, 410 (7th Cir. 2020) (citing *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)); *Baptist v. Kijakazi*, 74 F.4th 437, 442 (7th Cir. 2023).

The Court therefore finds that ALJ's RFC was supported by substantial evidence and Plaintiff failed to meet her evidentiary burden to show the RFC determination is either incorrect or insufficient. *Morales v. O'Malley*, 103 F.4th 469, 470-471 (7th Cir. 2024).

**b. The ALJ Properly Evaluated Opinions Pursuant to 20 C.F.R. § 404.1520c**

Next, Plaintiff alleges the ALJ did not properly evaluate the opinion of neuropsychological evaluator Dr. Hill or LSW Gomez under the requirements of 20 C.F.R. § 404.1520c. Plaintiff claims the ALJ should have considered whether any limitations were warranted from the report submitted by Dr. Hill. [Dkt. 17 at 11.] Although Dr. Hill opined on Plaintiff's eligibility for disability, which is an issue reserved for the Commissioner under 20 C.F.R. § 404.1520b(c)(3), the Court finds the ALJ properly analyzed Dr. Hill's remaining findings. Dr. Hill wrote that "Pandora's depression negatively impacts her level of functioning in multiple areas of functioning including vocational, personal, and social, and thus, she should be considered eligible for disability." [R. 1059.] Neither this statement nor the rest of Dr. Hill's assessment provided an opinion regarding Plaintiff's ability to maintain concentration or identified any specific work-related functional limitations and therefore did not meet the regulatory definition of a medical opinion. 20 C.F.R. § 404.1513(a)(2). Accordingly, the ALJ was under no obligation to evaluate Dr. Hill's remaining findings under the persuasiveness framework and committed no error in declining to do so. 20 C.F.R. § 404.1520c(d). The ALJ cannot be faulted for declining to infer limitations that Dr. Hill did not articulate. *See Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [the claimant] offered no opinion from any doctor to setting limits, or any other limits, greater than those the ALJ set."). To the extent the record contained evidence of concentration difficulties, the Court reads the ALJ's decision as a whole and finds the ALJ

adequately addressed such evidence in her broader RFC analysis. *See Deloney*, 840 F. App'x at 5. Further, the ALJ's decision does not support Plaintiff's claims the ALJ did not take into account specific other pieces of evidence which may have assisted the ALJ in determining any limitations stemming from Dr. Hill's assessment. While an ALJ is required to consider all relevant evidence, an ALJ is not required to mention every piece of evidence. *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020).

Plaintiff further argues the ALJ did not properly evaluate LSW Gomez's check box questionnaire. [Dkt. 17 at 13.] Despite unnecessarily noting that LSW Gomez is a social worker and not a doctor, the ALJ properly evaluated the persuasiveness of LSW Gomez's evaluation, addressing both the supportability and consistency factors as required under 20 C.F.R. § 404.1520c. The ALJ discussed how LSW Gomez's extreme opinion was unsupported by her own treatment notes, which included intact mental status examinations in June 2024. [R. 26.] The ALJ also addressed inconsistency with the record by noting that evaluations conducted by internist, Dr. Raabia Nizamuddin, and psychiatrist, Dr. Pradeep Thapar, both reflected normal mental status findings. *Id.* Nothing further is required of the ALJ under 20 C.F.R. § 404.1520c.

**c. The ALJ Properly Evaluated Plaintiff's Subjective Symptoms**

Finally, Plaintiff alleges the ALJ did not properly evaluate evidence of Plaintiff's symptoms under Social Security Ruling ("SSR") 16-3p and erred by engaging in "sit and squirm" jurisprudence. [Dkt. 17 at 15-16.] SSR 16-3p requires the ALJ to assess the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms and evaluate their consistency with the record as a whole. SSR 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). In applying SSR 16-3p, the ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms, but found that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence.

[R. 19.] The ALJ noted that Plaintiff's clear and articulate testimony was inconsistent with her claims of being unable to think and express herself clearly. [R. 24.] An ALJ does not engage in impermissible "sit and squirm" jurisprudence merely by observing that Plaintiff's hearing testimony was inconsistent with her alleged limitations. *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (noting that the role of observation in determining credibility has been repeatedly endorsed and citing cases). Additionally, the ALJ did not discount Plaintiff's allegations based solely on her appearance or demeanor at the hearing. The ALJ's evaluation of Plaintiff's subjective symptom allegations was grounded in the inconsistency between Plaintiff's own testimony, treatment history, and alleged limitations. [R. 19-24.] Plaintiff contends that the ALJ relied only on Plaintiff's travel and research related to gender transitioning to discount her subjective symptom allegations. [Dkt. 17 at 16.] However, those activities were only one part of the ALJ's analysis. The ALJ also repeatedly cited Plaintiff's treatment history, including her use of medication and participation in therapy, both of which Plaintiff testified were beneficial in managing her symptoms. [R. 23.] The ALJ also referenced Plaintiff's testimony of daily activities, which included grocery shopping and playing soccer. [R. 24.] The ALJ's credibility determination was therefore not the product of a single observation but rather a comprehensive analysis of the record and does not provide a basis for remand.

**5. Conclusion**

For the foregoing reasons, the Court declines to remand this matter. Plaintiff's motion for summary judgment [Dkt. 17] is DENIED and Defendant's motion for summary judgment [Dkt. 18] is GRANTED. The final decision of the Commissioner is affirmed.

**ENTERED: August 10, 2026**

Hon. Keri L. Holleb Hotaling,

United States Magistrate Judge